### IN THE

## SUPREME COURT

#### OF THE

## STATE OF LOUISIANA.

—◦◉◦—

### EASTERN DISTRICT, MAY TERM, 1828.

—◦◉◦—

### *MAYOR & AL. vs. MORGAN.*

**APPEAL** from the court of the parish and city of New-Orleans.

MARTIN, J. delivered the opinion of the court. Obedience having been refused by the City Council to the peremptory *mandamus*, issued by the court of the first district, commanding them to admit to a seat a person whom they had refused to receive, a writ of *distringas* was placed in the hands of the defendant, sheriff of the parish, who seized the revenues of the city. Whereupon the present

*The city council are, by law, judges of the election of their members.*

*No mandamus lies to compel them to admit a member whom they do not think duly elected*

*And the sheriff who executes a writ of distringas, to compel obedience to a mandamus in such a case, is a trespasser.*

action was commenced for an alleged trespass

He justified under the authority of the writ The plaintiffs were nonsuited, and appealed.

Their counsel has assigned as errors in the judgment of the parish court:

1. That the appellee is liable in damages, because he was not bound to execute the writ, and could dispute the authority of the district court.

2. That the parish court had jurisdiction to enquire into it.

There is not any doubt with us that a sheriff is bound to enquire into the authority of a court whose writ is put into his hands for execution, and that he is liable in damages for any injury resulting from his executing a writ issued by a court who has no jurisdiction of the case in which it issued.

Hence it follows that the court before whom a remedy is sought for such an injury, must necessarily enquire into the jurisdiction of the court from which the writ issued.

The success of the appellants before us, depends on their ability to shew that the district court was without jurisdiction.

Their counsel has referred us to the constitution, which provides that the citizens of the

Eastern Dist.
*May*, 1828.

MAYOR & AL
*vs*
MORGAN.

town of New-Orleans have the right of appointing the several public officers necessary for the administration and police of the said city, pursuant to the mode of election which shall be prescribed by the legislature. *Art.* 6, § 23.

To the sixth section of the thirty-fourth chapter of the acts of 1816, 1 *Martin's digest,* 331, *n* 38, which declares that the city council shall be judge of the elections of the mayor and recorder, and of its members.

And to the 873d article of the Code of Practice, by which it is enacted that when the legislature has granted to a corporation the right to determine the validity of the elections of its members or officers, courts of justice shall not issue mandates to inquire into that fact.

So the district court was ousted of all jurisdiction, if the legislature had the constitutional power of rendering the city-council judge of the elections of its members—and the only question for our solution is, whether the sixth section of the act of 1816, be contrary to the constitution. If it be, it is void.

We are ready to admit that we have found this case one of considerable difficulty; and

Eastern Dist.
*Ma.*, 1828.

MAYOR & AL
vs.
MORGAN

we at first concluded that the law was uncon-
stitutional; because to enquire into, and final-
ly determine on the rights of a party claiming
a seat in the council, is the exercise of judicial
power. To judge, is to determine the rights of
parties, and nothing else.

We thought that the right, created by law,
to take a seat in the body of which the appli-
cant for a *mandamus* asserted he was a mem-
ber, could not be distinguished from any other
right created by law—as the right of a child to
a parent's succession, or any other which po-
sitive legislative confers. And we concluded
that as the constitution has declared the judi-
cial power shall be vested in a supreme and
inferior courts, the judges of which must hold
their offices during good behaviour, and be
appointed by the governor, with the advice
and consent of the senate, the city-council,
being composed of members appointed
or a term of years, and elected by the peo-
ple of their respective wards, is not a body
in whom judicial power could be constitution-
ally vested.

But this reasoning presupposed that the le-
gislative, executive, and judicial powers, of
which the constitution speaks, are not merely

the legislative, executive, and judicial powers
of the state, exercised over every part of it, and
over every individual, dwelling, sojourning, or
accidentally being within its geographical lim-
its, but included those which may be exercised
by corporations, within certain divisions of the
state, and over their respective members.

If it were true, that judicial power cannot
be vested in the city-council, because, accord-
ing to the constitution, judicial power must be
vested in a supreme or inferior court, it would
follow that the council could not exercise le-
gislative powers, and pass ordinances, because
the constitution has declared that the legisla:
tive power is vested in a senate, house of re-
presentatives, and governor.

We think the constitution speaks of the
powers of the state government only; that the
legislature, in establishing corporations, may
enable them to exercise subordinate legisla-
tion, within a particular district, over their
members, *and in regard to their rights and
duties as corporators*—that the exercise of
this legislative power in the city-council is not
inconsistent with the exercise of judicial power
under the authority of the state—that the le-
gislature had constitutional power to enable

the council to legislate on matters within the scope of the charter, notwithstanding the constitution has declared the legislative power shall be vested in a senate, house of representatives, and goveraor.

Likewise, as the council could not well proceed to business without ascertaining the rights of its members to their seats, the legislature had power to render it judge of the validity of their elections, and prohibit courts of justice from interfering with its decisions. There is not greater incongruity in the council exercising in this respect, within the city of New-Orleans, a kind of judicial power, than in exercising legislative powers, which it is universally admitted they may exercise, in matters which are the object of the charter of the city.

The constitution itself contains a clause that supports the position, that the powers it speaks of, are state powers only. It disqualifies the mayor of New-Orleans from sitting in the state legislature.

Now, in construing an instrument, it is a good rule to give effect to every clause, nay every word of. it.

If the executive powers, of which the constitution speaks, be not state powers only, the

mayor, who exercises executive power in the city, was excluded by the clause which forbids any person from exercising both legislative and executive powers, and the clause which excludes him from the state legislature, was absolutely useless. Its insertion favours the idea that the convention contemplated merely state powers.

Eastern Dist. _M._ 1823.

MAYOR & AL. vs. MORGAN.

This reasoning has satisfied our minds. If it were not absolutely conclusive, it would create such a doubt as would forbid us to declare an act of the legislature unconstitutional

This court, and every court in this state, not only possesses the right, but is in duty bound, to declare void every act of the legislature which is contrary to the constitution. The due exercise of this power is of the utmost importance to the people, and if it did not exist their rights would be shadows, their laws delusions, and their liberty a dream; but it should be exerted with the utmost caution, and when great and serious doubts exist, this tribunal should give to the people the example of obedience to the will of the legislator.

It is desirable that, for every wrong, there should be a legal remedy in a court of justice. But in Louisiana, the constitution has left eve-

Eastern Dist.
May, 1828.

MAYOR & AL
vs,
MORGAN,

ry judicial power in abeyance with the excep= tion of that vested in this court, liable to be called into action, suspended or recalled at the discretion of the legislature. The supreme court, with one single exception, has no origi= nal jurisdiction, and the other courts have on= ly that which the legislature has given them.

We can justly boast of the goodness of our institutions, but they are human, and conse= quently imperfect. In the present case, the error of the city council, if it be one, in reject= ing the claim of the applicant, cannot be cor= rected in a court of justice. This is unfortu= nate, but the legislature has willed it, and it is not perhaps the only case in which a citizen seeking relief in the temple of the justice of his country, may find the divinity turning a deaf ear to his complaints, and her ministers pow= erless.

We conclude that the act of the legislature of 1816 did not violate the constitution: that the court of the first district was consequently without jurisdiction, that its proceedings were *coram non judice*: that the appellee derived no authority from the writ of *distringas*, and was guilty of a trespass in seizing the revenues of the appellants.

It is therefore ordered, adjudged, and de-creed, that the judgment of the parish court be annulled, avoided, and reversed. That there be judgment for the plaintiffs; and that the case be remanded, with directions to the judge to ascertain the damages sustained by them in the premises, and that the appellee pay costs in this court.

*Moreau* for the plaintiffs—*Livermore* for the defendants.